UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ALAN W. JENKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00591-JPH-TAB |
| | ) | |
| CENTURION HEALTH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANT GROVES'S MOTION FOR SUMMARY JUDGMENT**

Alan Jenkins, who is incarcerated by the Indiana Department of Correction ("IDOC"), alleges in this case that the defendants denied him necessary care for his eye problems when he was incarcerated at Pendleton Correctional Facility ("PCF"). Defendant Elizabeth Groves has moved for summary judgment. Dkt. 156. For the reasons below, that motion is **GRANTED**.

## I.
## Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-

finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because the defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Jenkins as the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

Dr. Groves works as an ophthalmologist at Ascension Medical Group St. Vincent – Anderson Eye Care ("Ascension Medical"). Dkt. 157-2 at ¶¶ 3-4. When she treated Mr. Jenkins, she did so at her office at Ascension Medical in

Anderson, Indiana, not at a prison or jail facility. *Id.* ¶ 5. She was not employed by the State of Indiana or Centurion Health to provide medical care to prisoners. Dkt. 157-2 ¶ 6-7. Neither she or her practice had a contract with either the State of Indiana or Centurion to provide medical care to prisoners. *Id.* Her practice does not focus on serving prisoners and less than 2% of her patients were prisoners or pre-trial detainees. *Id.* ¶ 8. She did not act under instructions from the State or Centurion when she treated Mr. Jenkins and she affirms that Mr. Jenkins's status as a prisoner did not affect her medical judgments. *Id.* at 9-10.

Dr. Groves first saw Mr. Jenkins on December 5, 2022. Dkt. 159 at 11-12, 18-19. Based on her assessment, Dr. Grove's plan was to perform cataract surgery, and she did so on February 1, 2023. Dkt. 157-2 ¶ 11b; dkt. 159 at 43. Mr. Jenkins returned for a follow-up the next day. Dkt. 157-1 ¶ 35; dkt. 159-1 at 18. Mr. Jenkins returned to Dr. Groves on March 9, 2023, with a report of vision issues in his right eye. Dkt. 159-1 at 5. Dr. Groves was never notified of the complaints of worsening vision before March 9, 2023 visit. Dkt. 157-2 ¶ 11e. Because a potential complication of cataract surgery is optic neuropathy, Dr. Groves ordered an MRI. Dkt. 157-1 ¶ 36; dkt. 157-2 at ¶11e; dkt. 159-1 at 5. Mr. Jenkins had no further appointments with Dr. Groves after this visit. Dkt. 157-2 ¶ 12.

## III.
## Discussion

Dr. Groves argues that Mr. Jenkins cannot pursue claims under 42 U.S.C. § 1983 against her because she was not acting under color of state law. To state a § 1983 claim, a plaintiff must allege the violation of a right secured by the

Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan,* 47 F.3d 628, 638 (3d Cir. 1995). For the individual defendants to act "under color of state law" for § 1983 purposes means to "misuse [ ] power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Burrell v. City of Mattoon*, 378 F.3d 642, 649 (7th Cir. 2004) (quoting *Honaker v. Smith*, 256 F.3d 477, 484 (7th Cir.2001).

In *Rodriguez v. Plymouth Ambulance Service*, the Seventh Circuit analyzed whether private medical professionals and institutions acted under color of law when providing medical care to state prisoners. 577 F.3d 816, 827 (7th Cir. 2009). The *Rodriguez* court "focus[ed] on the relationship among the state, the health care provider, *and* the prisoner." *Id.* at 826. "The ultimate issue in determining whether a person is subject to suit under § 1983 is [whether] the alleged infringement of federal rights [is] 'fairly attributable to the State?'" *Id.* at 823–34 (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). This can be shown in at least two ways: "The first is where the State effectively directs or controls the actions of the private party such that the State can be held responsible for the private party's decision. The second situation is when the State delegates a public function to a private entity." *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019) (cleaned up).

The *Rodriguez* court provided various factors that should be considered to determine whether a contractor operating in a prison should be treated as a state actor. First, the court looked at the setting in which the medical providers performed the public function and "the degree to which the professional decisions made in rendering the care are influenced by the status of the patient as a prisoner and the directives of the state[.]" *Rodriguez*, 577 F.3d at 827. Second, the court looked to the "degree of state control or coercion" in the medical professional's performance of the public function. *Id.* Third, the court considered whether the entity assumed the responsibility voluntarily by "entering into a contractual relationship [with the State]". *Id.* Finally, the *Rodriguez* court noted that "[t]o the degree that the private entity does not replace, but merely assists the state in [a public function], the private entity's responsibility for the [public function] becomes more attenuated." *Id.* at 828.

**A. Setting**

Here, it is undisputed that Dr. Groves treated Mr. Jenkins at a private facility. Dkt. 157-2 ¶ 5. Mr. Jenkins argues, nonetheless, that he was accompanied by correctional officers, was restrained in chains, and was seated in a "back room." The appropriate inquiry remains “the *degree* to which the professional decisions made in rendering the care are influenced by the status of the patient as a prisoner and the directives of the state ... with respect to the manner and the mode of care.” *Id.* at 827. Mr. Jenkins has not designated evidence that his status as a prisoner influenced Dr. Groves's care. *See Taylor v. Byrd*, No. 25-1743, 2026 WL 1815366, at *3 (7th Cir. June 24, 2026). Mr.

Jenkins points to *Jones v. Cullinan*, No. 09 C 03916, 2013 WL 1340405, at *6 (N.D. Ill. Mar. 31, 2013), in support of the argument that this may create a material issue of fact. Although in *Jones* the court ultimately found issues of fact regarding whether the defendant was a state actor, the court noted that the setting of the care weighed in the defendant's favor. *Id.* at *5. The same is true here. The setting of his treatment – at a private eye clinic – weighs in favor of a conclusion that Dr. Groves was not a state actor.

**B. Degree of state influence**

Next, Dr. Groves affirms that she did not act under instruction or orders from the State. Dkt. 157-2 ¶ 9-10. Mr. Jenkins suggests that Dr. Groves's care was guided by a State policy against the prescription of pain medications to prisoners. But he does not designate evidence to support this statement. Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that affidavits in support of or in response to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "'[A]lthough personal knowledge may include reasonable inferences, those inferences must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" *Weaver v. Speedway*, LLC, 28 F.4th 816, 825 (7th Cir. 2022) (quoting *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (internal quotation omitted); *see also* Fed. R. Evid. 602.

Mr. Jenkins also suggests that because Dr. Groves's office did not provide his medical records when he requested them and instead directed him to the prison to obtain them, the prison somehow influenced Dr. Groves's treatment decisions. Dkt. 182-1 at 7. But this request, sent months after Dr. Groves treated him, only allows a conclusion that the prison managed Mr. Jenkins's records, and is not enough to allow a reasonable factfinder to conclude that the State directed his care.

Mr. Jones has not designated evidence to allow a jury to conclude that the State influenced Dr. Groves's treatment decisions.

**C. Voluntary nature of treatment**

Dr. Groves affirms that neither she nor her practice had a contract with the State or with Centurion to provide treatment to prisoners. Dkt. 157-2 ¶ 6-8. Mr. Jenkins contends that Dr. Groves had an informal contract with Centurion, but he designates no evidence to support this contention. The Seventh Circuit has explained that "private organizations and their employees that have only an incidental and transitory relationship with the state's penal system usually cannot be said to have accepted, voluntarily, the responsibility of acting for the state...." *Rodriguez*, 577 F.3d at 827. Mr. Jenkins has not designated evidence that Dr. Groves had more than a transitory relationship with the State. This factor therefore weighs in favor of a conclusion that Dr. Groves was not a state actor.

**D. Nature of relationship**

Finally, for a private entity to be classified as a state actor, it "must have a direct, not an attenuated, relationship with the prisoner-patient." *Rodriguez*, 577 F.3d at 828. Mr. Jenkins argues that Dr. Groves "assumed the entire responsibility for" his care. Dkt. 182 at 27. But Mr. Jenkins has not designated evidence to support this conclusion. To the contrary, Dr. Groves has designated evidence that she saw him only a few times for his eye issues. First, on December 5, 2022, she assessed him and recommended surgery, which she performed on February 1, 2023. Dkt. 159 at 11-12, 18-19, 43. She saw him again on March 9, 2023, for his report of vision issues in his right eye. Dkt. 159-1 at 5. She ordered an MRI and did not see him again. Dkt. 157-1 ¶ 36; dkt. 157-2 ¶ 12. This factor, too, weighs in favor of a conclusion that Dr. Groves was not a state actor.

## IV.
## Conclusion

Based on the designated evidence, no reasonable jury could conclude that Dr. Elizabeth Groves acted under color of state law when she treated Mr. Jenkins. Her motion for summary judgment, dkt. [156], is **GRANTED.** The **clerk shall terminate** her as a defendant. No partial final judgment shall issue as to the claims resolved in this Order.

**SO ORDERED.**

Date: 11/2/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

ALAN W. JENKINS
870097
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

All Electronically Registered Counsel